**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

THE STEP2 COMPANY, LLC    )    CASE NO.  5:08CV2580
        )
        PLAINTIFF,    )    JUDGE SARA LIOI
        )
vs.        )
        )    MEMORANDUM OPINION
        )
        )
PARALLAX GROUP    )
INTERNATIONAL, LLC, et al.,    )
        )
        DEFENDANTS.    )

Plaintiff The Step2 Company, LLC ("Plaintiff" or "Step2") filed this declaratory judgment action against Defendants Bruce Thrush ("Thrush") and Parallax Group International, LLC ("Parallax") (collectively "Defendants"). Before the Court is Defendants' second motion to dismiss or transfer the First Amended Complaint on the grounds that, pursuant to Fed. R. Civ. P. 12(b)(2), personal jurisdiction is lacking. (Doc. No. 30.) For the reasons discussed below, the Court concludes that it may properly exercise personal jurisdiction over the Defendants, and that venue properly lies in this judicial district. Therefore, Defendants' motion to dismiss or transfer is **DENIED**.

**Background**

Step2 is an Ohio limited liability corporation with its principal place of business in the forum. Step2 makes and sells children's products and other plastic products, including a cushioned play mat with interlocking teeth. Parallax is a California limited liability company with its principal place of business in California, and defendant

Thrush is the company's President, CEO, and owner, and a fellow resident of California. Parallax distributes flooring products, including automotive, residential, and commercial flooring made from plastic, foam, rubber, and carpet. Its primary product is a play mat referred to as an EVA floor mat, which is the subject of this declaratory judgment action. (Doc. No. 33, Ex. B, Deposition of Bruce Thrush at 28.)

Defendants are co-owners of United States Design Patent No. D543,764 ("the '764 patent") for a "resilient mat," otherwise known as the EVA floor mat. For purposes of the present motion, Defendants do not dispute that Parallax has contracted with Sam's Club and Menards to sell its floor mat nationwide.[1] (Thrush Dep. at 30-31.) Defendants also concede that the play mats are available for purchase at Sears.com and Amazon.com. (*Id*. at 31.)

In October 2008, Thrush contacted a paralegal in Wal-Mart's legal department, after discovering that Step2 was selling its children's play mat in Wal-Mart. Thrush admits that the purpose of the call was to encourage Wal-Mart to remove Step2's children's mat from its stores because Thrush believed that the play mat infringed upon the '764 patent. (Thrush Dep. at 75-76 and Exhs. 11 and 12.) Thrush also contacted Wal-Mart through email correspondence. (*Id*., Exhs. 11 and 12.) On October 30, 2008, Wal-Mart informed Defendants that it had removed the allegedly infringing product from its shelves pending a resolution of the controversy. (*Id*. at 76.)

Thrush also contacted Step2's in-house counsel in Ohio to discuss Step2's allegedly infringing play mat. (*Id*.) He informed counsel that he "wanted to discuss an infringing product" and apprised her of the situation with Wal-Mart. (*Id*.) Thrush was

advised that a representative from Step2 would "get back to him." (*Id*.) Step2 responded by filing the instant action asserting a claim for declaratory judgment of non-infringement and/or invalidity of the '764 patent.

On October 1, 2008, Thrush, in his capacity as CEO of Parallax, assigned a 10% ownership interest in the '764 patent back to himself. (Doc. No. 33, Ex. Q, Assignment.) Thrush did not pay any consideration to Parallax for the 10% interest (*Id*.), nor does Parallax pay Thrush any royalties for the assignment. (Thrush Dep. at 99.)

Defendants moved to dismiss or transfer on the grounds that the Court lacks personal jurisdiction over either Parallax or Thrush. Step2 brought a motion seeking additional discovery that it believed was relevant to establishing personal jurisdiction over Defendants. After the parties had fully briefed the issue of discovery, the Court granted Step2's motion, and afforded the parties an opportunity to conduct discovery on the limited issue of personal jurisdiction. (Doc. No. 26.) At the conclusion of this brief discovery period, Defendants filed their second motion to dismiss.

Defendants maintain that discovery failed to uncover any evidence that Parallax's contacts with Ohio are "continuous and systematic," and that Defendants' efforts to enforce the '764 in Ohio were "nothing more than the normal cease-and-desist efforts of a patentee enforcing its rights." (Doc. No. 31 at 10.) Defendants also argue that there is no evidence that Thrush purposefully availed himself as an individual of the State of Ohio, and that the use of the alter ego theory to pierce the corporate veil would be inappropriate. Finally, Defendants insist that even if the Court could exercise personal jurisdiction over them, it should transfer the case to the United States District Court for

---

[1] Prior to October 1, 2008, Parallax held a 100% ownership in the '764 patent.

the Central District of California. (Doc. No. 31 at 13, Ex. 1, Decl. of Bruce Thrush at ¶ 26.)

**Standard of Review**

In deciding a pretrial motion to dismiss for lack of personal jurisdiction, a district court may, in its discretion, determine the motion on the basis of affidavits alone; it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). If the court chooses not to conduct an evidentiary hearing on the motion, the plaintiff need only make a prima facie showing of jurisdiction. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). Dismissal is thus "only proper if all of the specific facts alleged collectively failed to state a prima facie case for jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991).

**Defendants' Motion to Dismiss**

*Jurisdiction over Parallax*

Personal jurisdiction in patent infringement cases is governed by the law of the United States Court of Appeals for the Federal Circuit rather than the law of the regional circuit in which the action arose. *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1997). *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994) (Courts apply Federal Circuit law to resolve the question of personal jurisdiction in patent cases where the issues are "intimately related to substantive patent law.") To support the exercise of jurisdiction over a non-resident defendant, a plaintiff must show that the forum state's long-arm statute applies, and that the exercise of jurisdiction is in accordance with the Due Process Clause of the Fourteenth Amendment.

4

*Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1319 (Fed. Cir. 2005).

Ohio's long-arm statute does not extend to the greatest reach consistent with due process. *Hildebrand v. Steck Mfg. Co.,* 279 F.3d 1351, 1354 (Fed. Cir. 2002) (citing *Goldstein v. Christiansen*, 70 Ohio St. 3d 232 (1994)). Accordingly, application of Ohio's long-arm statute requires separate discussions as to whether a defendant is amenable to suit under Ohio's long-arm statute and whether such jurisdiction would violate due process. *Walker v. Concoby*, 79 F. Supp. 2d 827, 831 (N.D. Ohio 1999). The Federal Circuit interprets "the Ohio long-arm statute in accordance with Ohio precedent." *Hildebrand*, 279 F.3d at 1354.

        1)        Ohio Long-Arm Statute, OHIO REV. CODE § 2307.382

Ohio's long-arm statute provides, in part, that "[a] Court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this state; (2) Contracting to supply services or goods in this state; (3) Causing tortious injury by an act or omission in this state; [or] (4) Causing tortuous injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state […]." OHIO REV. CODE § 2307.382. Subsection (A) makes clear that for personal jurisdiction to exist under Ohio's long-arm statute, the cause of action must arise from the defendant's conduct in Ohio. The statute, therefore, only contemplates specific jurisdiction.

2)        General Jurisdiction

Due process limits on personal jurisdiction make a distinction between general and specific jurisdiction. General personal jurisdiction exists where the defendant has "continuous and systematic contacts" with the forum state, irrespective of whether the cause of action is related to those contacts. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984); *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found*., 297 F.3d 1343, 1350 (Fed. Cir. 2002). On the other hand, specific personal jurisdiction may exist where the defendant has only minimal contacts with the forum state, so long as the plaintiff's claim arises from those contacts, and exercise of jurisdiction is constitutionally reasonable. *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1378 (Fed. Cir. 1998) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

In recent years, there has been some debate as to whether Ohio recognizes general jurisdiction. *See Keybanc Capital Mkts. Inc. v. Alpine Biomed Corp*., 2008 U.S. Dist. LEXIS 112156, at *7-*14 (N.D. Ohio Mar. 7, 2008) (collecting cases for and against applying a general jurisdiction analysis in Ohio). Both the Sixth and the Federal Circuit, however, have concluded that the exercise of personal jurisdiction in Ohio is not limited to specific personal jurisdiction or causes of action arising from a defendant's conduct in the state. *See Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006); *LSI Indus. Inc. v. Hubbell Lighting, Inc*., 232 F.3d 1369, 1373 (Fed. Cir. 2000).

In *LSI,* the Court recognized that while Ohio's long-arm statute was limited to conduct that would constitute specific jurisdiction, the statute, itself, contemplated that personal jurisdiction was not limited to activity enumerated in the

6

statute. 232 F.3d at 1373. Interpreting prior Ohio Supreme Court precedent, the court applied a general jurisdictional "hook" to exercise general jurisdiction over a defendant where the defendant's contacts with Ohio did not give rise to the cause of action. Under this "hook," "when an out-of-state defendant conducts 'continuous and systematic' business in Ohio, it is 'doing business' in Ohio and is amenable to process there, even if the cause of action did not arise from activity in Ohio." *Id.* Consequently, this Court employs a due process analysis when considering the existence of general personal jurisdiction.

In the patent infringement litigation context, "an assertion of general jurisdiction requires that the defendant have 'continuous and systematic' contacts with the forum state, and that such activity will confer [] [general] personal jurisdiction even when the cause of action has no relationship with those contacts." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1331-32 (Fed. Cir. 2008) (internal citation omitted). Although the Supreme Court has not developed a specific test for determining whether a defendant's activities within a state are continuous and systematic, courts often consider the following non-exclusive factors: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings, or bank accounts; and (4) the volume of business conducted in the state by the corporation. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996). Once it has been determined that the contacts are "continuous and systematic," the court must consider whether the assertion of personal jurisdiction would

7

comport with "fair play and substantial justice."[2] *Burger King*, 471 U.S. at 476. *See Avocent*, 552 F.3d at 1331.

Defendants insist that this Court cannot exercise general jurisdiction over Parallex because its contacts with Ohio cannot be described as "continuous or systematic." Defendants note that Parallax does not maintain an office in Ohio (Thrush Dep. at 113), has never sent an agent or representative to Ohio (Thrush Decl. at ¶ 5), has no employees in Ohio (Thrush Dep. at 113-14), does not lease or own property in Ohio (Thrush Dep. at 110 and Thrush Decl. at ¶ 3), and has never sold any goods or services directly into Ohio. (Thrush Dep. at 64.) Further, while Defendants acknowledge three previous contacts with Ohio residents, they characterize such contacts as "de minimus."[3]

Step2 does not rely upon Defendants' arguably "de minimus" past contacts with Ohio, but, instead, seeks the application of the "stream of commerce" doctrine that the Supreme Court first addressed in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). According to Step2, Parallax has established at least four distribution channels by contracting with Sam's Club, Mernards, Sears.com, and Amazon.com, and that these distribution channels have resulted in the sale of products throughout the United States and Ohio. (Thrush Dep. at 30-31, 50.) Specifically, Step2

---

[2] Factors to be considered include: "[1] 'the burden on the defendant,' [2] 'the forum State's interest in adjudicating the dispute,' [3] 'the plaintiff's interest in obtaining convenient and effective relief,' [4] 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and [5] the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980)).

[3] These instances include the following: (1) Parallax once sent a garage floor sample in response to a request from a North Carolina distributor who was considering selling to an Ohio-based company; (2) Parallax sent a garage cabinet sample to a different Ohio-based company, and (3) an Ohio resident mistakenly attempted to purchase a floor mat from Parallax's website. The first two instances failed to solidify into on-going business relationships with Parallax. In the third instance, Parallax informed the would-be Ohio customer that she should purchase the floor mat directly from Sam's Club or Mernards. (Thrush Dep. at 64.)

points to evidence that demonstrates that since 2007, Defendants have sold 1.2 million dollars worth of Parallax's products to Ohio residents. (Doc. No. 33, Ex. C.) Step2 maintains that this evidence establishes that Defendants purposefully delivered products into the stream of commerce with the reasonable expectation that these products will be purchased by consumers in Ohio.

In *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987), the Supreme Court split with respect to what constitutes sufficient minimum contacts under the stream of commerce theory. Writing for the four member plurality, Justice O'Connor found that due process required "an action of the defendant purposefully directed toward the forum State." *Id.* at 112. Justice O'Connor explained that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id*. Rather, Justice O'Connor noted that some "[a]dditional conduct" which was "purposefully directed toward the forum State" was necessary to support personal jurisdiction under the stream of commerce theory.[4] *Id.*

Writing for three members of the Court, Justice Brennan rejected the notion that "additional conduct" was necessary to support the stream of commerce theory. He explained that: "[t]he stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to

---

[4] Justice O'Connor stated that additional conduct may include "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, [and] marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id*. at 112.

distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise."[5] *Id*. at 117.

The Federal Circuit has repeatedly elected not to rule on whether minimum contacts are established merely by placing a product into the stream of commerce with an awareness of its potential destination, or whether some "additional conduct" is necessary. *See Beverley Hills Fan.,* 21 F.3d at 1566 ("[The Federal Circuit] need not join this debate here, since we find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing."); *Avocent*, 552 F.3d at 1331 (noting that "it remains unclear whether contacts based solely on the 'stream of commerce' may suffice to establish general jurisdiction."); *Commissariat al 'Energie*, 395 F.3d at 1322 n.7 ("We have yet to decide whether Justice Brennan's standard is sufficient to satisfy due process, because we have yet to be presented with facts that do not meet the more rigorous standard adopted by Justice O'Connor.")

Regardless of whether the "stream of commerce" or "stream of commerce *plus*" theory is employed, the Court finds that Step2 has made a prima facie case of personal jurisdiction with respect to Parallax. There is no dispute that Parallax sells its products through national retailers Sam's Club and Menards. (Thrush Dep. at 30-31.) Further, Step2 has come forward with evidence that Parallax has sold over $1,200,000 worth of EVA floor mats in Ohio in the last three years through Sam's Club, alone (Doc.

---

[5] While Justice Brennan agreed that there must be evidence that the defendant purposefully availed himself of business in the forum State, he concluded that the majority's "stream of commerce plus" theory represented a "marked retreat from the analysis" set for in the *World-Wide Volkswagen* case. *Id.* at 118.

No. 33, Ex. C), and can also point to evidence that Defendants knew that Sam's Club and Mernards had stores in Ohio and that Parallax's products would be sold in Ohio. (Thrush Dep. at 48-50.) It is reasonable to infer that EVA floor mats placed into the stream of commerce through these established national distribution channels may make their way to Ohio.[6] *See Kernius v. Int'l Elec., Inc*., 433 F. Supp. 2d 621, 626 (D. Md. 2006).

In *Kernius*, the court found that the use of national retailers as distribution channels for electronic devices supported a prima facie case of general jurisdiction. *Id*. at 626. In reaching this conclusion, the court observed that "[a] corporation cannot sell its products to national retailers such as RadioShack, Best Buy, Target, and Wal-Mart and then claim that it is surprised to be haled into court in a particular State because, to the best of the corporation's knowledge, it was not specifically aware that its products were actually sold or used in that State." *Id*. at 627. The court also found telling that the defendant did not even argue that its products were not sold in the state in question. *Id*.

Here, Parallax did not merely release its goods into the stream of commerce, with some of the products serendipitously making their way to Ohio. Instead, Parallax cultivated on-going relationships with national retailers for the purpose of distributing its goods throughout the United States. Having established multiple distribution channels through national retailers, Parallax cannot claim surprise that some of its products would be sold in Ohio. In fact, Defendants have never denied that the use

---

[6] Parallax also sells its products through Sears.com and Amazon.com. (*Id*. at 31.) However, these websites, which are not maintained by Parallax, are not specifically directed at Ohio, but instead are available to all potential customers with Internet access. As such, they cannot support a finding that Defendants have purposefully availed themselves of Ohio. *See Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) ("[T]he fact that [the defendant] maintains a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction."); *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008).

of these distribution channels has led to sales in Ohio, (*see id* at 627), and admit that they were aware that retailers like Sam's Club and Mernards had stores in the State of Ohio and that they had enjoyed substantial sales in the State.[7] From these facts, the Court finds that Parallax maintained "continuous and systematic" contacts with Ohio by purposefully availing itself of the benefit of doing business in the State. Parallax intentionally placed its products into the stream of commerce, knowing that a likely destination of its products was Ohio.[8] *See Beverly Hills Fan*, 21 F.3d at 1564 ("From these ongoing relationships, it can be presumed that the distribution channel formed by defendants and Builder's Square was intentionally established, and that defendants knew, or reasonably could have foreseen that a termination point of the channel was Virginia."); *Schwanger v. Munchkin, Inc.*, 1999 U.S. App. LEXIS 25038, at *16 (Fed. Cir. Oct. 7, 1999) ("Munchkin purposefully shipped the accused product into Ohio through Wal-Mart, an established distribution channel"); *LSI*, 232 F.3d at 1375 (defendant had continuous and systematic contacts with Ohio based upon substantial sales in the State and broad distribution channels). *See, e.g., Hanamint Corp., Inc. v. Alliant Mktg. Group, LLC*, 481 F. Supp. 2d 444, 448 (M.D. N.C. 2007) (When defendants entered into an agreement with Wal-Mart it created a distribution channel through which defendants "knew or should have known

---

[7] Indeed, Parallax kept records of its sales in Ohio, (*see* Doc. No. 33, Ex. C), and cannot, therefore, claim that it was unaware that its relationship with stores, like Sam's Club, was netting significant revenue from Ohio.

[8] In addition, Defendants admit that, as a term of its agreement with Sam's Club, Parallax is required to maintain a toll-free customer service number to address customer issues (Thrush Dep. at 68), and that it has two sales representative whose responsibility it is to respond to customer complaints in Ohio. (Thrush Dep. at 67-68.) Further, discovery revealed evidence that one of Parallax's sales representatives responded to at least one customer complaint in Ohio regarding the warranty plan. (Doc. No. 33, Ex. I.) While evidence on this subject fails to reveal an elaborate mechanism for responding to customer complaints in the forum, it is sufficient to serve as further additional conduct indicating an intent to serve the market forum under the stream of commerce plus theory. *See Asahi*, 480 U.S. at 112.

[…] that North Carolina was a likely destination of their products.")

With respect to the other factors of the Federal Circuit's test for personal jurisdiction, it is clear that Ohio has a significant interest in discouraging patent infringement within its boundaries, "and also has a substantial interest in cooperating with other states to provide a forum for efficiently litigating [this] cause of action." *See Kernius*, 433 F. Supp. 2d at 627 (citing *Beverly Hills Fan*., 21 F.2d at 1568.) The burden on Parallax to litigate in this forum, though not insignificant, does not outweigh Plaintiff's and Ohio's interests because "progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome." *World-Wide Volkswagen*, 444 U.S. at 294. This is not one of those "rare" cases discussed by the Federal Circuit "in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan*, 21 F.3d at 1568. Therefore, the Court is satisfied that the exercise of general personal jurisdiction over Parallax comports with due process.

*Jurisdiction over Thrush*

Thrush argues that even if there exists personal jurisdiction as to Parallax, it cannot be found as to him because in all his dealings with Ohio, he was acting in his official capacity as an officer of Parallax. Thrush, therefore, seeks the protection of the corporate shield doctrine, which holds that "if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981).

13

The Sixth Circuit, however, has effectively rejected, or at the very least severely limited the use of, the corporate shield doctrine. While acknowledging that "'jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation,'" the court found that "the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants." *Balance Dynamics Corp. v. Schmitt Indus., Inc*., 204 F.3d 683, 698 (6th Cir. 2000) (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974)). Instead, the court held that "where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether []he purposely availed [him]self of the forum and the reasonably foreseeable consequences of that availment." *Id*. at 698.

Thus, it becomes necessary to evaluate Thrush's contacts with Ohio. As discussed above, the Court has found that Parallax, through the creation of its distribution channels, has sufficient minimum contacts with Ohio. There is no evidence, however, that Thrush played a significant role in creating these channels. For example, while Thrush admits that he signed the agreement with Sam's Club on behalf of Parallax, Thrush underscores the fact that there were no negotiations with Sam's Club. (Thrush Dep. at 47.)

The only direct contacts Thrush appears to have had with Ohio involve his efforts on behalf of Parallax to enforce the '764 patent against Step2; in particular, the phone calls Thrush made and the letters Thrush sent to Step2 and Wal-Mart. Inasmuch as

14

these activities form the basis for the present declaratory judgment action, they would, if sufficient, support a finding of specific jurisdiction against Thrush. *See Avocent*, 552 F.3d at 1332.

The Federal Circuit employs a three-prong test to determine whether the exercise of specific jurisdiction is appropriate by exploring whether: "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc*., 444 F.3d 1356,1363 (Fed. Cir. 2006) (citing *Akro*, 45 F.3d at 1545-46). *See Avocent,* 552 F.3d at 1332. "The first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (citing *Akro*, 45 F.3d at 1545).

The Federal Circuit has determined that sending "cease and desist" letters to residents of a particular State, alone, is insufficient to confer personal jurisdiction in that State. *Campbell Pet Co.*, 542 F.3d 879, 885 (Fed. Cir. 2005) (citing *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003)). In *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, the court explained that:

> Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness.

148 F.3d 1355, 1360-61 (Fed. Cir. 1998). In light of these policy considerations, the

15

Federal Circuit has determined that "[f]or the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum and related to the cause of action besides the letters threatening an infringement suit." *Silent Drive*, 326 F.3d at 1202 (citing *Inamed*, 249 F.3d at 1361). *See Avocent*, 552 F.3d at 1333. In *Avocent*, the court noted that these "other activities" might include "initiating judicial or extrajudicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." 552 F.3d at 1334. *See Campbell Pet Co*., 542 F.3d at 886.

There is no evidence that any of the distributor agreements entered into by Parallax were exclusive, or contained a contractual obligation to enforce the patents.[9] Plaintiff suggests, however, that Thrush engaged in "other activities" that were directed at the forum when he contacted Wal-Mart and requested that it remove Step2's products from its shelves. (*See* Thrush Dep. at 76.)

A number of recent Federal Circuit cases address the type of "other activities" needed to make the exercise of specific personal jurisdiction appropriate, and their divergent results force the Court to draw exceptionally fine distinctions. In *Avocent*, the plaintiff, a corporation located in Alabama, filed a non-infringement declaratory judgment action in Alabama district court against the defendant, a Taiwanese corporation with offices in California. 552 F.3d at 1328. The defendant sold its products online

---

[9] Thrush testified that, early in the relationship with Sam's Club, Defendants had been "voluntarily […] loyal to Sam's" as its only distributor (Thrush Dep. at 84), but there was never any contractual obligation to do so.

through websites including Amazon.com, which could be accessed by and would ship products to Alabama residents, and through big box retailers Best Buy and CompUSA, which operated stores in Alabama.  *Id.* at 1327. The defendant sent three letters seeking to enforce its patent rights: one to the plaintiff's CEO; a second to Amazon in Seattle, Washington, encouraging Amazon to stop selling plaintiff's allegedly infringing products on-line; and a third to the plaintiff's Virginia-based patent lawyers. *Id.* at 1327-28.

On these facts, the court in *Avocent* held that the exercise of specific personal jurisdiction would not comport with due process. It found that the "only activity pertinent to Avocent's Lanham Act claim consists of sending letters alleging patent infringement." *Id*. at 1340. Without analysis or explanation, the court concluded that the sending of the four letters, alone, did not subject the defendant to personal jurisdiction in Alabama. *Id*.

In *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, the patentees contacted eBay in California for the purpose of encouraging eBay to suspend the alleged infringer's auction of certain products in Colorado. The Tenth Circuit determined that, by these additional actions, the patentee had purposefully availed themselves of the forum in Colorado. 514 F.3d 1063, 1077-78 (10th Cir. 2008). Similarly, in *Campbell Pet Co*., the patentee engaged in "other activities" directed at the forum when she arrived at a trade show held within the forum and attempted to have third parties at the trade show remove the allegedly infringing products from the show. The court found that these "extra-judicial patent enforcement" activities satisfied the "other activities" requirement because they were "targeted at [the alleged infringer's] business activities in Washington and can fairly be characterized as attempts to limit competition from [the alleged infringer] at the

17

Seattle convention." 542 F.3d at 886.

        While it is a close call, the Court finds that the present case is more closely aligned with the facts in *Campbell* and *Dudnikov* because Thrush specifically targeted business activities in Ohio. Thrush admits that it was his intent to have Wal-Mart remove Step2's play mats from its shelves in all Wal-Mart stores, including those in Ohio.[10] (Thrush Dep. at 76.) Therefore, Thrush's efforts can be characterized as an attempt to limit Step2's ability to compete with Parallax in Ohio. *Campbell Pet Co.*, 542 F.3d at 886. It is this extra effort, directed specifically to Ohio, which compels the Court to find that Thrush purposefully availed himself of this forum.[11]

        With respect to the Federal Circuit's second specific jurisdiction factor, it is clear that the cause of action for declaratory judgment is alleged to arise out of Thrush's efforts to enforce the '764 patent.[12] Further, Thrush has failed to come forward with any evidence to show that it would be fundamentally unfair to require him to defend in this judicial forum.

        Morever, the nature of the transfer of the 10% interest in the '764 patent from Parallax to Thrush weighs heavily in favor of a finding that the imposition of

---

[10] On this point, *Avocent* can be distinguished on the facts. While it is true that one of the letters the defendant sent to a retailer requested that it cease selling the plaintiff's products, the retailer in question, Amazon, only sold its products on-line, and there was no evidence that its website targeted customers in Alabama. Here, Thrush admits that he intended that Step2's products would be removed from store shelves in Ohio.

[11] The fact that Thrush intended to interfere with Step2's business activities in other states, as well, does not distract from the fact that he intended to interfere in Ohio. Just as the manufacturer who develops a distribution chain through a national retailer must reasonably expect his products to reach numerous forums, the patentee who calls upon the nation's largest retailer, Wal-Mart, to remove allegedly infringing products from its stores knows that the effects of this activity will be felt in multiple forums. Thrush is not relieved of the consequences of his actions merely because he intended to affect business in many states.

[12] In *Red Wing Shoe*, the Federal Circuit held that allegations of infringement in a cease-and-desist letter act as restraint on commerce, and a declaratory judgment action instituted by the alleged infringer to determine the issue of infringement arises out of these allegations. 148 F.3d at 1360.

personal jurisdiction over Thrush would be "reasonable and fair." *See generally, Akro*, 45 F.3d at 1543. In *Dainippon Screen Mfg. Co. v. CFMT, Inc*., the Federal Circuit refused to permit a transfer of interest in a patent from a parent corporation to a newly formed subsidiary to defeat personal jurisdiction. 142 F.3d 1266 (Fed. Cir. 1998). The court observed:

> Stripped to its essentials, CFM contends that a parent company can incorporate a holding company in another state, transfer its patents to the holding company, arrange to have those patents licensed back to itself by virtue of its complete control over the holding company, and threaten its competitors with infringement without fear of being a declaratory judgment defendant, save perhaps in the state of incorporation of the holding company. This argument qualifies for one of our "chutzpah awards."

*Dainippon*, 142 F.3d at 1271. While acknowledging that the holding company was a "legitimate creature" which provided certain "business advantages," the court held that it "cannot fairly be used to insulate patent owners from defending declaratory judgment actions in those fora where its parent company operates under the patent and engages in activities sufficient to create personal jurisdiction and declaratory judgment jurisdiction." *Id*. *See Ergo Licensing, LLC v. Cardinal Health, Inc.*, 2009 U.S. Dist. LEXIS 17387, at *6 (D. Me. Mar. 5, 2009) (citing *Dainippon*, 142 F.3d at 1268) (company could not avoid personal jurisdiction by attributing all sales activities to wholly owned subsidiary).

Similarly, in the present case, it would appear that the transfer of 10% interest in the '764 patent was accomplished, at least in part, to avoid personal jurisdiction. Thrush paid no consideration for the interest, and Parallax pays no royalties on the '764 patent. (Thrush Dep. at 98-99.) Further, the assignment was not received by

counsel until the day after the present lawsuit was filed,[13] and when asked why the transfer was made, Thrush refused to give a reason.[14] (*Id.* at 96.) Under these circumstances, and in light of the Federal Circuit's view in *Dainippon*, the Court finds that the exercise of specific personal jurisdiction over Thrush comports with due process. *See, e.g., Pfizer Inc. v. Synthon Holding, B.V.*, 386 F. Supp. 2d 666 (M.D. N.C. 2005) (fair and reasonable to exercise personal jurisdiction in a patent case over defendant where indirect wholly-owned subsidiary of defendant was created, at least in part, to steer litigation outside of the jurisdiction).

*Indispensability under Fed. R. Civ. P. 12(b)[15]*

Even if personal jurisdiction over Thrush was not proper in Ohio, Thrush would not be considered an indispensable party under Fed. R. Civ. P. 19, such that the case could not continue in this forum in his absence. The question of indispensability under Rule 19 is governed by regional circuit law. *See Dainippon*, 142 F.3d at 1272-73 (applying Ninth Circuit law in patent case and concluding that the newly formed holding company did not satisfy Rule 19's requirements for an indispensable party).

The Sixth Circuit has explained that the resolution of the question of joinder and indispensability under Rule 19 involves a three-step process. *Keeweenaw Bay*

---

[13]  While the assignment document is dated October 1, 2009, Thrush admits that he did not send the assignment to his counsel until October 31, 2009, the day after the lawsuit was filed. (Thrush Dep. at 98.)

[14]  Defendants' counsel also indicated that it viewed an assignment of interest in the patent as a means for frustrating personal jurisdiction. In an email directed to Plaintiff's counsel, Attorney Robert Fish informed defense counsel that "[e]ven if you somehow did secure jurisdiction over Mr. Thrush, jurisdiction in this case would still fail if there were a further assignment of rights to someone outside of Parallax." (Thrush Dep., Ex. 18, email dated February 6, 2009.)

[15]  The Court previously concluded that the question of whether Thrush was an indispensable party was moot because Step2 voluntarily added Thrush as a defendant after Parallax advised Step2 of the transfer of the 10% interest in the '974 patent. (Doc. No. 26 at 20.) The Court offers the following analysis solely in an effort to demonstrate that, had it concluded that it could not exercise personal jurisdiction over Thrush, it still would not have been inclined to dismiss or transfer this action.

*Indian Comm. v. Michigan*, 11 F.3d 1341, 1344 (6th Cir. 1993). First, the court must determine whether the person is a necessary party under Rule 19(a):

> A person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if (A) in that person's absence, the court cannot accord complete relief among those already parties, or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

If the court finds that the absent party or entity falls within either one of these provisions, the party is thus one to be joined if feasible. The court must then consider steps two and three: the issues of personal jurisdiction and indispensability. *Keweenaw Bay Indian Comm.,* 11 F.3d at 1345. If personal jurisdiction is present, the party shall be joined. *Id*. If personal jurisdiction is absent, the court continues to step 2 to determine whether the absent party is indispensable. *Id.*

Here, Thrush is a necessary party because he has an interest in protecting his rights in the '974 patent, and a finding of invalidity of the patent, or non-infringement by Step2, would compromise these rights. *See Hooper v. Wolfe*, 396 F.3d 744, 748 (6th Cir. 2005) (partnership's interest in protecting partnership assets was separate and apart from the individual partner's interest in the protecting the general pool of assets of the partnership of which the individual could claim a portion); *Dainippon*, 142 F.3d at 1272 (patent holder would be prejudiced by a declaration of invalidity of the patent). This finding of prejudice, however, would not automatically make Thrush indispensable. *See Dainippon*, 142 F.3d at 1272. The Court would still be constrained to consider the second and third steps of the indispensability analysis.

21

Assuming, for the sake of argument, that the Court could not exercise personal jurisdiction over Thrush, a balance of the relevant factors set forth in Rule 19(b), addressing "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed," would lead to the conclusion that Thrush was not indispensable. *See Glancy v. Taubman Centers, Inc.,* 373 F.3d 656, 672 (6th Cir. 2004) (citing Fed. R. Civ. P. 19(b)). Under Rule 19(b), "[a] court must balance: (1) the extent to which a judgment rendered in the person's absence might be prejudicial to either that person or those already parties; (2) the extent to which such prejudice could be lessened or avoided through protective provisions in the judgment or other measures; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed." *Hooper*, 396 F.3d at 749 (citing Fed. R. Civ. P. 19(b)).

"When assessing prejudice, the court must consider whether the interests of an absent party are adequately represented by those already a party to the litigation." *Id*. at 749 (citing *Glancy*, 373 F.3d at 672). Here, Parallax is properly before this Court. Even assuming *arguendo* that Thrush is not, the fact remains that he is the President and CEO of Parallax, and he and his wife are the sole owners of Parallax. (Thrush Dep. at 17.) Moreover, Parallax owns 90% of the same patent of which Thrush now enjoys a small interest. As such, his interests are perfectly aligned with that of Parallax, and there is no reason to believe that Parallax would not adequately represent these interests. *See Hooper*, 396 F.3d at 750 (partner's shared interest with non-party partnership was sufficient to mitigate any prejudice from partnership's absence from lawsuit); *Dainippon*, 142 F.3d at 1272 (corporation would protect interests of wholly-owned holding

22

company). Moreover, if the case were to continue in Thrush's absence, Thrush would be able to "intervene in the suit, and this 'opportunity to intervene may be considered in calculating [any] prejudicial effect.'" *Dainippon*, 142 F.3d at 1272 (quoting *Takeda v. Northwestern Nat'l Life Ins. Co*., 765 F.2d 815, 820 n.5 (9th Cir. 1985)).

The second factor, the court's ability to fashion relief to avoid prejudice, "is of little relevance in the context of a patent declaratory judgment suit because the relief sought in such a suit does not depend upon the patentee's presence in court." *Id*. at 1272-73 Likewise, the third factor, adequacy of the judgment, would favor maintaining the suit in Thrush's absence because "a declaratory judgment suit is not one in which 'the plaintiff seeks relief that will require an affirmative act by the absentee […].'" *Id*.

As to the fourth and final factor, the fact that this action, if dismissed, could be brought against both defendants in another forum, the United States District Court for the Central District of California, favors dismissal. *See Hooper*, 396 F.3d at 751. A balance of the factors, however, leads the Court to conclude that Thrush was not an indispensable party. *See Dainippon*, 142 F.3d at 1273.

*Venue*

Defendants argue that should the Court decline to dismiss the action and instead elect to transfer the case, the proper venue to receive the case is the United States District Court for the Central District of California. (Mot. at 13, Thrush Decl. at ¶ 26.) Because this Court has personal jurisdiction over Defendants, venue in this Court is also proper. *See Walker v. Concoby*, 79 F. Supp. 2d at 835 (finding venue proper because the defendants were subject to personal jurisdiction in the Northern District of Ohio); 28 U.S.C. § 1391(c). Moreover, Defendants have failed to allege that the venue selected by

Plaintiff is inconvenient under 28 U.S.C. § 1404. Thus, since the Court deems venue to be proper, and has no reason to consider whether or not it is convenient, this case should not be transferred to the Central District of California

**Conclusion**

For all of the forgoing reasons, Defendants' motion to dismiss or transfer is **DENIED**.

**IT IS SO ORDERED**.

Dated: September 17, 2010

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**